United States District Court
District of Columbia

**AFFIDAVIT OF SPECIAL AGENT MATTHEW MAHONEY IN SUPPORT OF APPLICATION FOR SEARCH WARRANT**

Your affiant, Matthew Mahoney, a Special Agent with the Drug Enforcement Administration, being duly sworn, hereby depose and state as follows:

**A.  Introduction and Agent Background**

1. I make this affidavit in support of an application for a search warrant for a certain account controlled by the free web-based electronic mail service provider known as Yahoo! Inc. (Yahoo) headquartered at 71 1st Avenue, Sunnyvale, California 94089.  The account to be searched is mercuriopluton007@yahoo.com,  which are further described in the following paragraphs and in Attachment A.  As set forth herein, there is probable cause to believe that on the computer systems of Yahoo, there exists evidence, fruits, and instrumentalities of  violations of Title 21 United States Code, Sections 952 (importation of a controlled substance), 959(a) (Manufacture or distribution for purpose of unlawful importation) and Section 963 (Attempt and Conspiracy).

2.  I am a Special Agent of the Drug Enforcement Administration (DEA) assigned to the Bilateral Case Group, Special Operations Division. As such, I am an "investigative or law enforcement officer" of the United States within the meaning of Title 18, United States Code, Section 2510(7), that is, an officer of the United States who is empowered by law to conduct investigations of and to make arrests for offenses enumerated in Title 18, United States Code, Section 2516(1).  I have been a DEA Special Agent for over nine years.

1

3. Prior to my employment with DEA, your Affiant was employed as a police officer in New York.

4. Upon transferring to the DEA, your Affiant underwent an intensive sixteen-week basic agent training program, which included training in drug investigation techniques, drug identification, search and seizure laws, asset forfeiture laws, and arrest techniques. During the past nine (9) years that your Affiant has been employed as a Special Agent with the DEA, your Affiant has personally conducted and assisted in numerous investigations involving the distribution of controlled substances. These investigations have resulted in the issuance of numerous arrest warrants, search warrants, the indictment and conviction of individuals for state and federal violations.

5. I am familiar with the operations of illegal international drug trafficking organizations in various parts of the world, including South America and Mexico.

6. I am familiar with the ways in which narcotic traffickers conduct their business, including methods of importing and distributing narcotics, money laundering, the use of satellite phones, cellular telephones and the internet to facilitate their illegal acts, and the use of numerical codes and code words to conduct drug transactions. My training and experience as a Special Agent of the DEA, my conversations with other Special Agents of the DEA, foreign law enforcement, state and local investigators familiar with narcotics trafficking and money laundering matters, form the basis of the opinions and conclusions set forth below, which I drew from the facts set forth herein.

7. In my training and experience, I have learned that Yahoo is a company that provides free web based Internet electronic mail ("e-mail") access to the general public, and that stored electronic communications, including opened and unopened e-mail for Yahoo mail subscribers may

be located on the computers of Yahoo. Further, I am aware that computers located at Yahoo contain information and other stored electronic communications belonging to unrelated third parties. Accordingly, this affidavit and application for search warrant seek authorization solely to search the computer accounts and/or files and following the procedures described herein and in Attachment A.

**B. Background Regarding Computers, the Internet, and E-mail**

8. The term "computer" as used herein is defined in 18 U.S.C. 1030(e)(1), and includes an electronic, magnetic, optical, electrochemical, or other high speed data processing device performing logical, arithmetic, or storage functions, and includes any data storage facility or communications facility directly related to or operating in conjunction with such device.

9. Based on my training, experience and knowledge, I know the following:

    a. The Internet is a worldwide network of computer systems operated by governmental entities, corporations, and universities. In order to access the Internet, and individual computer user must subscribe to an access provider, which operates a host computer system with direct access to the Internet. The World Wide Web ("www") is a functionality of the Internet, which allows users of the Internet to share information;

    b. With a computer connected to the Internet, an individual computer user can make electronic contact with millions of computers around the world. This connection can be made by any means, including modem, local area network, wireless and numerous other methods; and

    c. E-mail is a popular form of transmitting messages and/or files in an electronic environment between computer users. When an individual computer user sends e-mail, it is initiated

at the user's computer, transmitted to the subscriber's mail server, then transmitted to its final destination. A server is a computer that is attached to a dedicated network and serves many users. An e-mail server may allow users to post and read messages and to communicate via electronic means.

**C. Yahoo**

10. Based on my training and experience, I have learned the following about Yahoo :

a. Yahoo is an e-mail service which is available free of charge to Internet users. Subscribers obtain an account by registering on the Internet with Yahoo. Yahoo requests subscribers to provide basic information, such as name, gender, zip code and other personal/biographical information. However, Yahoo does not verify the information provided;

b. Yahoo maintains electronic records pertaining to the individuals and companies for which they maintain subscriber accounts. These records include account access information, e-mail transaction information, and account application information;

c. Subscribers to Yahoo may access their accounts on servers maintained and/or owned by Yahoo from any computer connected to the Internet located anywhere in the world;

d. Any e-mail that is sent to an Yahoo subscriber is stored in the subscriber's "mailbox" on Yahoo's servers until the subscriber deletes the e-mail or the subscriber's mailbox exceeds the storage limits preset by Yahoo. If the message is not deleted by the subscriber, the account is below the maximum limit, and the subscriber accesses the account periodically, that message can remain on Yahoo servers indefinitely;

e. When the subscriber sends an e-mail, it is initiated at the user's computer,

4

transferred via the Internet to Yahoo's servers, and then transmitted to its end destination. Yahoo users have the option of saving a copy of the e-mail sent. Unless the sender of the e-mail specifically deletes the e-mail from the Yahoo server, the e-mail can remain on the system indefinitely. The sender can delete the stored e-mail message thereby eliminating it from the e-mail box maintained at Yahoo, but that message will remain in the recipient's e-mail box unless the recipient deletes it as well or unless the recipient's account is subject to account size limitations;

  f. A Yahoo subscriber can store files, including e-mails and image files, on servers maintained and/or owned by yahoo; and

  g. E-mails and image files stored on a Yahoo server by a subscriber may not necessarily be located in the subscriber's home computer. The subscriber may store e-mails and/or other files on the Yahoo server for which there is insufficient storage space in the subscriber's computer and/or which he/she does not wish to maintain in the computer in his/her residence. A search of the files in the computer in the subscriber's residence will not necessarily uncover the files that the subscriber has stored on the Yahoo server.

**D. Stored Wire and Electronic Communication Access**

 11. Title 18, United States Code, Chapter 121, Sections 2701 through 2711, is entitled "Stored Wire and Electronic Communications and Transactional Records Access."

  a) Title 18, United States Code, Section 2703(a), provides:

> A governmental entity may require the disclosure by a provider of electronic communication service of the contents of a wire or electronic communication, that is in electronic storage in an electronic communications system for one hundred and eighty days or less, only pursuant to a warrant issued using the procedures described in the Federal Rules of Criminal Procedure by a court with jurisdiction over the offense under investigation or equivalent State warrant. A governmental entity may require the disclosure by a provider of electronic communications services of the

contents of a wire or electronic communication that has been in electronic storage in an electronic communications system for more than one hundred and eighty days by the means available under subsection (b) of this section.

b) Title 18, United States Code, Section 2703(b), provides, in part:

(1) A government entity may require a provider of remote computing service to disclose the contents of any electronic communication to which this paragraph is made applicable by paragraph (2) of this subsection-
(A) without required notice to the subscriber or customer, if the governmental entity obtains a warrant issued using the procedures described in the Federal Rules of Criminal Procedure by a court with jurisdiction over the offense under investigation. . .
(2) Paragraph (1) is applicable with respect to any electronic communication that is held or maintained on that service -
(A) On behalf of, and received by means of electronic transmission from (or created by means of computer processing of communications received by means of electronic transmission from), a subscriber or customer of such remote computing service; and
(B) Solely for the purpose of providing storage or computer processing services to such subscriber or customer, if the provider is not authorized to access the contents of any such communications for purposes of providing any services other than storage or computer processing.

c) The government may also obtain records and other information pertaining to a subscriber to or customer of electronic communication service or remote computing service by way of a search warrant. 18 U.S.C. 2703(c)(1)(A). No notice to the subscriber or customer is required. 18 U.S.C. 2703(c)(3).

d) Title 18, United States Code, Section 2711, provides, in part:

As used in this chapter -
(1) The terms defined in section 2510 of this title have, respectively, the definitions given such terms in that section; and
(2) The term "remote computing service" means the provision to the public of computer storage or processing services by means of an electronic communications system.

6

e) Title 18, United States Code, Section 2510, provides, in part:

> (8) "contents" when used in respect to any wire, oral, or electronic communication, includes any information concerning the substance, purport, or meaning of that communication...
> (14) "electronic communications system" means any wire, radio, electromagnetic, photo optical or photo electronic facilities for the transmission of electronic communications, and any computer facilities or related electronic equipment for the electronic storage of such communications;
> (15) "electronic communications service" means any service which provides the users thereof the ability to send or receive wire or electronic communications;...
> (17) "electronic storage" means -
> (A) any temporary, intermediate storage of a wire or electronic communication incidental to the electronic transmission thereof; and
> (B) any storage of such communication by an electronic communication service for purposes of backup protection of such communication.

**E. Search Procedure**

12. In order to ensure that Agents search only those computer accounts and or files described in Attachment A, this affidavit and application for search warrant seeks authorization to permit employees of Yahoo to assist agents in the execution of this warrant. To further ensure that Agents executing this warrant search only those computer accounts and/or files described in Attachment A, the following procedures will be implemented:

a. The search warrant will be presented to Yahoo personnel who will be directed to isolate those accounts and files described in Attachment A;

b. In order to minimize any disruption of computer service to innocent third parties, Yahoo employees (with or without law enforcement personnel) trained in the operation of computers will create an exact duplicate of the computer accounts and files described in Attachment A,

7

including an exact duplicate of all information stored in the computer accounts and files described in Attachment A;[1]

  c. Yahoo employees will provide the exact duplicate in electronic form of the accounts and files described in Attachment A and all information stored in those accounts and files to the agent who serves this search warrant;

  d. Law enforcement personnel will thereafter review the information stored in the accounts and files received from Yahoo employees and then identify and copy the information contained in those accounts and files which are authorized to be further copied by this search warrant; and

  e. Law enforcement personnel will then seal the original duplicate of the accounts and files received from Yahoo employees and will not further review the original duplicate absent an order of the Court.

## F. Basis for Facts Contained in this Affidavit

13. Except where otherwise noted, the information set forth in this affidavit has been provided to me directly or indirectly by Special Agents of the DEA or other law enforcement officers. Unless otherwise noted, wherever in this affidavit I assert that a statement was made, the information was provided by another law enforcement officer (who may have had either

---

[1] The absence of a law enforcement officer at the time of the actual search in the context of computer files located with an Internet Service Provider has been deemed constitutional. United States v. Bach, 310 F.3d 1063 (8th Cir. 2002), *cert. denied* 123 S. Ct. 1873 (2003).

8

direct or hearsay knowledge of the statement) to whom I have spoken or whose report I have read and reviewed. Such statements are among many statements made by others and are stated in substance, unless otherwise indicated. Similarly, information resulting from surveillance, except where indicated, does not set forth my personal observations but rather has been provided directly or indirectly by other law enforcement officers who conducted such surveillance.

14. I have not set forth each and every fact learned during the course of this investigation.

Rather, I have set forth only the facts that I believe are necessary to establish probable cause for the issuance of a search and seizure warrant based on the instant affidavit.

**G. Probable Cause**

15. Over the past several years, a reliable and proven Drug Enforcement Administration (DEA) Cooperating Source (CS), working in Central America, was in contact with a Guatemalan Drug Trafficker Jorge Ricardo Bardales-Bourdet. Bardales-Bourdet had been assisting a Colombian Drug Trafficking Organization with the movement of container loads of cocaine from Panama to Guatemala with final destination to the United States over the past several years.

16. During the negotiations with Bardales-Bourdet, Bardales-Bourdet requested that the CS assist him with the movement of cocaine from Panama to Guatemala. Bardales-Bourdet requested that the CS help him establish a bogus business in order to send containers of cocaine to Guatemala. During the course of the negotiations and meetings, Bardales-Bourdet provided the CS with two email addresses in which they could communicate. Bardales-Bourdet made it clear that it was safer

9

to use the internet than to use the phone.

    17.  On September 16, 2005, Bardales-Bourdet sent an email to the CS from email account "Javier Rodriguez" mercuriopluton007@yahoo.com.mx.  Bardales-Boourdet stated "were a 100% over here, I spoke with the people from the business about consolidating through the phone, when we get together today I will tell you the rates in "consolidados" (consolidates), I'll send you the general instructions so that you give them to your cousin Raul over there.  First of all the prices, over here we are charging $600 per person for the events, having a minimum of 500 persons because of the costs and from there up, the people who want to go have no limit 1000, 2000, etc.

The first thing that has to be done is to make a company, this consists of renting an office with a secretary, computer, furniture, fax, etc., afterwards a banking contract will be made to be able to solicit through the "SAT" which is the tax collecting company the code of importations, which is the one that is going to work for us to be able to import anything, these are new regulations, to avoid the existence of ghost companies, but we have everything arranged that way. Another of the things, is to find/get a warehouse, if there isn't one//if they don't have one, if they have it all the better, because if they don't have any type of structure then the warehouses would also need to be managed and more people would be needed, with regards to the importation code and something very important is to send a clean sample with cheap merchandise to be able to activate the import code and the good one won't have any problems in the payment of taxes. Another thing, you all would be paying for the taxes that are paid on the merchandise that is brought in.  The price for creating a new company legitimately accountable, banking contracts, office, secretary, fax, computer and furniture, it is approximately some $7,800 this doesn't include warehouse, if the warehouse is needed it would be

$4,500 more to be able to rent it, since the one who signs the contracts charges $1,500 to sign it."

18.  In substance, Bardales-Bourdet was asking the CS to start up a bogus business in order to send a container of cocaine from Panama to Guatemala.  Bardales-Bourdet said that the transportation fees per kilogram of cocaine were $600.00 and that the minimum amount was 500 and the maximum amount could be 1,000, 2,000 or more.

19. On April 16, 2006, Bardales-Bourdet responded to an email received from the CS.  The CS stated in the email "Hi friend I am programming a trip to your land soon, accompanied by an investor from my neighboring country.  He is interested in knowing the prices of the calves in your country and in knowing your structure in receiving the cattle over there, well he wants to work over a thousand heads with the idea of sending them to the markets of the coldest north, I don't know if you can collaborate with the bringing up of the calves to the ranches alright any questions/doubts let me know."

20. Bardales-Bourdet replied on April 16, 2006 from email account "Javier Rodriguez" mercuriopluton007@yahoo.com.mx " How are you doing over there, we are 100% over here, with respect to your friend's  cattle, I have several options to send it to the cold north came back today from Holy week//Easter, tell your friend to come talk with me over here, or where he tells me because it's easy to do this business from over there with layovers and afterwards the other side with respect to the insurance I have 2 people up to now, after Holy week//Easter, I will talk to you by telephone or answer my mail as soon as possible, greetings for now."

21. On April 26, 2006, the CS met with Bardales-Bourdet in Guatemala City, Guatemala. During the meeting, Bardales-Bourdet stated that he was working with two Venezuelan Drug

11

Trafficking organizations that were transporting cocaine from Panama to Guatemala. Bardales-Bourdet stated he recently received 1,000 kilograms at Puerto Santo Tomas and that he was expecting another 1,500 kilograms next week.

22. During this meeting, Bardales-Bourdet provided the CS with a business card with his phone number on it and two email addresses he could be reached at: jrbardales@hotmail.com and mercuriopluton007@yahoo.com.

23. On April 4, 2006, DEA S/A William Brown issued DEA 79's (administrative subpoenas) to Yahoo and Hotmail. On April 12, 2006, Yahoo responded to the DEA 79 reference mercuriopluton007@yahoo.com and provided the following information:

    Login Name:  Mercuriopluton007
    Properties Used:  Mail
    Yahoo Mail Name:  Mercuriopluton007@yahoo.com.mx
    (Alternate) Email Address:  guillermobardales@hotmail.com
    Registration IP Address: 200.6.220.122
    Other Identities:  Mercuriopluton007
    Full Name:  Mr. Javier Rodriguez
    Account Created (reg):  Wed Feb 16 05:37:03 2005
    My Yahoo Configured (dora):  Thu Sep 22 10:19:07 2005
    Account Status:  Active

During the period requested on the subpoena (period from 01/01/06 to April 4, 2006) there were (9) nine log-ins.

24. On April 5, 2006, Hotmail responded to the DEA 79 reference jrbardales@hotmail.com and provided the following information:

    Login:  jrbardales@hotmail.com
    First name:  Jorge
    Last Name:  Bardales Bourdet

12

      Country:  GT
      Registered from IP: 216.230.150.11
      Date Registered:  11/25/2005 4:37:49 PM
      Reply To Address:  jrbardales@hotmail.com

Between November 25, 2005 and March 20, 2006, there were (34) thirty-four log-ins. It should be noted that on several occasions, there were log-ins on the Yahoo account and Hotmail account on the same day and only minutes a part.

**H.  Conclusion**

      25.  Based upon the information above, your affiant believes probable cause exists that the computer systems owned, maintained, and/or operated by Yahoo, headquartered at Sunnyvale, California, contain evidence, fruits, and instrumentalities of violations of Title 21, US Code, Sections 952, 959(a) and 963. By this affidavit and application, I request that the Court issue a search warrant directed to Yahoo allowing agents to seize the e-mail, attachments, and other information (described in Attachment A) stored on the Yahoo servers for the computer accounts and files associated with mercuriopluton007@yahoo.com. The search warrant will be faxed to Yahoo personnel who will be directed to produce those accounts and files.

**I.  Request for Sealing**

      26.  Since this investigation is continuing, disclosure of the search warrant, this affidavit, and/or this application and the attachments thereto will jeopardize the progress of the investigation. Accordingly, I request that the Court issue an order that the search warrant, this affidavit in support of application for search warrant, the application for search warrant, and all attachments thereto be filed under seal until further order of this Court. In addition, because notification of the existence of

this order will seriously jeopardize an investigation, I request that the Court issue an order pursuant to 18 U.S.C. Section 2705(b) ordering Yahoo not to notify any person of the existence of the application, affidavit, search warrant and attachment, until directed to do so by the Court

_____
Matthew Mahoney
Special Agent
Drug Enforcement Administration

Sworn to and subscribed before me this _____ day of May, 2006.

_____
Honorable Alan Kay
District Court Magistrate Judge

14